UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-336-FDW

| | |
|---|---|
| DAVID G. HOUGH, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | ORDER |

THIS MATTER is before the Court on Plaintiff David G. Hough's Motion for Summary Judgment (Doc. No. 11), and Defendant Commissioner of the Social Security Administration Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 13). Plaintiff seeks judicial review of an unfavorable administrative decision on his application for Period of Disability and Disability Insurance Benefits ("DIB").

Upon review and consideration of the written arguments, administrative record, and applicable authority, Plaintiff's Motion for Summary Judgment is DENIED for the reasons discussed below; the Commissioner's Motion for Summary Judgment is GRANTED, and the Commissioner's decision is AFFIRMED.

I. BACKGROUND

Plaintiff filed an application for disability insurance benefits under title II of the Act in June 2013, alleging disability beginning June 1, 2012. (Tr. 150). The claim was denied initially (Tr. 89) and as well as on reconsideration. (Tr. 94). Plaintiff requested an administrative hearing (Tr. 101), which was held before an ALJ on February 4, 2016. (Tr. 35). On April 28, 2016, the ALJ denied the claim, finding that Plaintiff was not disabled under the Act (Tr. 15-30).

1

The ALJ found Plaintiff had not engaged in substantial gainful activity during the period from his amended alleged onset date of March 1, 2013, through his date last insured of December 31, 2014. (Tr. 24). The ALJ found Plaintiff to have the following severe impairments: post-laminectomy syndrome, obesity, and depression. Id. The ALJ found that although "[Plaintiff] reported some vision deficits at times and underwent a corneal graft in his right eye, there is no indication that he experienced any substantial vision loss or that any of his symptoms would have had more than a minimal effect on his ability to do basic work activities for a period of twelve or more continuous months. (Tr. 24). In May 2014, Plaintiff reported he was "very happy" with the vision in that eye and was "doing well." (Tr. 25). The ALJ found that there is no evidence that Plaintiff's impairments "resulted in an inability to ambulate effectively or an inability to perform fine and gross movements effectively." Id. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App.1 (20 CFR 404.1520(d), 404.1525, and 404.1526). Id. The ALJ also found "there is no evidence of hospitalization, exacerbations of the claimant's symptoms accompanied by loss of adaptive functioning, or increased treatment during the relevant time period." (Tr. 26). Furthermore, neither "paragraph B" nor "paragraph C" criteria were satisfied. Id.

The ALJ determined Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a):

> [E]xcept he requires the option to alternate between sitting and standing with the option to alternate twice per hour without losing productivity. He is also limited to occasional postural movements except he cannot climb ladders, ropes, or scaffolds. He is also limited to routine, repetitive tasks that involve occasional decision making and only occasional changes to the work duties throughout the day.

(Tr. 26). In response to hypotheticals that factored in Plaintiff's work experience, current conditions, and RFC, the vocational expert ("VE") testified that Plaintiff could not perform his past relevant work but could perform other jobs (Addresser, Document Preparer, Waxer) that exist in significant numbers in the national economy. (Tr. 63-64). As a result, the ALJ concluded Plaintiff was not disabled, as defined under the Social Security Act, at any time from June 1, 2012, the alleged onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(g)). (Tr. 34).

Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g), seeking judicial review of that decision. The issue is whether the claimant is disabled under 216(i) and 223(d) of the Social Security Act. (Tr. 22).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes this Court to review the final decision of the Commissioner of Social Security to deny social security benefits. A reviewing court must uphold the ALJ's decision when (1) the ALJ has applied correct legal standards and (2) substantial evidence supports the factual findings. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1982). It is evidence that a reasonable mind might accept as adequately supporting a conclusion. Id. When examining a disability determination, a reviewing court may not re-weigh conflicting evidence or make credibility determinations as "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Commissioner must have applied the correct legal standard. Bird, 699 F.3d at 340. The Commissioner uses a five-step procedure for social security claims. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id. See also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016). At the end of the third step, the Commissioner determines the claimant's RFC. Lewis v. Berryhill, 858 F.3d 858, 861-62 (4th Cir. 2017). A claimant's RFC is relevant if the claimant fails to meet a listed disability. Id. To succeed at the fourth step, the claimant must show his inability to perform past work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015). If successful, the burden shifts to the government for the final step to prove that a significant number of jobs exist in the national economy which are suitable for the plaintiff. Lewis, 858 F.3d at 861-62. The government typically attempts to meet this burden through posing hypotheticals incorporating claimant's limitations to the VE, who then testifies whether claimant is able to work. Id. at 862. If the Commissioner meets this burden in step five, the ALJ will deem claimant not disabled and deny the benefits application. Id.

## III. ANALYSIS

The issues here are whether (1) the ALJ properly determined the plaintiff's mental RFC limitations, and (2) whether the ALJ properly relied on the VE's testimony. (Doc. No. 12 p. 4-5).

The Court has reviewed the pleadings and briefs and now addresses Plaintiff's assignments of errors below.

A.    **Plaintiff's RFC Limitations**

Plaintiff contends the ALJ erred by failing to provide a full function-by-function analysis of the non-exertional mental functions associated with Plaintiff's mental impairments. (Doc. No. 12 p. 13). The Court addresses Plaintiff's assignment of errors below.

   1.   **Plaintiff's moderate difficulties with concentration, persistence, or pace**

Plaintiff asserts the ALJ does not determine or discuss Plaintiff's ability to stay on task due to his moderate difficulties with concentration, persistence, or pace, thus warranting remand. (Doc. No. 12 pp. 15-17). The court in <u>Mascio</u> held the ability to perform simple tasks differs from the ability to stay on task and only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace. 780 F.3d at 638. The court further stated:

> Perhaps the ALJ can explain why [plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [plaintiff's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.

<u>Id.</u>

In the present case, the ALJ determined Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. (Tr. 26). The ALJ found "[Plaintiff] reported difficulty concentrating, but also said in a function report that he is able to complete tasks and follow instructions well." <u>Id.</u> The ALJ found Plaintiff "reported preparing simple meals, which indicates he has the ability to perform simple tasks." <u>Id.</u> Though Plaintiff has reported limited concentration, he stated he "can finish what he starts." (Tr. 27). Per <u>Mascio</u>, the ALJ explained why the concentration, persistence, or pace limitation does not affect Plaintiff's ability to work.

Further, the ALJ gave less weight to Dr. Strobel-Nuss's opinion found in Exhibit 1A, as the doctor found Plaintiff's mental impairments were not severe. (Tr. 32). In giving Plaintiff "the full benefit of the doubt," the ALJ found Plaintiff's depression severe and gave considerable weight to the State agency psychological consultant, Dr. Salmony, who opined "[Plaintiff] [had] moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation." Id. Despite these limitations, Dr. Salmony testified "the claimant can perform simple tasks, interact well with others, and can work in a stable environment." Id. Dr. Salmony's opinion is supported by the record as a whole that documents Plaintiff's mental impairments, which have been fairly well controlled by medication. Id. They are consistent with Dr. Patterson's treatment notes, the fact that Plaintiff has not required any emergency room or inpatient treatment for his mental impairments, his reported activities of daily living, and his testimony that his "anxiety has been well controlled with medication." Id. The ALJ adequately explained why Plaintiff's moderate limitations in concentration, persistence, or pace does not translate into Plaintiff's RFC limitation.

   **2. Social functioning**

Plaintiff asserts the ALJ did not provide an explanation of the effect of Plaintiff's restrictions in social functioning on his ability to engage in work activity. (Doc. No. 12 p. 17). This Court has held although the ALJ's findings at step two and three may not require an RFC that imposes limitations on social functioning, the ALJ must at least provide a sufficient explanation in the decision to allow the Court to determine why no limitations as to social functioning were included in the RFC despite the ALJ's finding that Plaintiff has moderate difficulties in social functioning. See Scruggs v. Colvin, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) ("Because the court is left to guess as to how the ALJ concluded that

Plaintiff could perform the relevant functions in light of her mental limitations, the court finds that substantial evidence does not support his decision and that remand is therefore appropriate."); see also Reinhardt v. Colvin, 2015 WL 1756480, at *3 (W.D.N.C. 2015) ("While the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, Mascio clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work related limitations when plaintiff's RFC for work is considered.").

The ALJ noted in social functioning, "claimant had mild difficulties" and reported "no difficulties getting along with others, including authority figures." (Tr. 25). Plaintiff's friend visits him each week and they "watch movies or talk." Id. Plaintiff also reported "going to eat breakfast with [my] wife daily" and that he is in charge of preparing dinner and makes "simple meals that he can work on throughout the day." (Tr. 28).

The ALJ noted in step two Plaintiff's obesity being a limiting factor on Plaintiff's ability to sustain activity on a "regular and continuing basis during an eight-hour day." Id. Though no medical source attributed additional or cumulative limitations to Plaintiff's obesity, the ALJ took it into consideration in reaching her conclusion. Id. The ALJ concluded "the evidence demonstrates that the combined impact of the claimant's other impairments with obesity would not preclude the performance of work at the level specified in [the] residual functional capacity finding." (Tr. 30).

In her discussion of Plaintiff's RFC, the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functioning by considering Plaintiff's reported limited activities of daily living and medical

7

treatments. (Tr. 22-28). Yet no substantial deficits in interaction were noted in any of the treatment or examination records. (Tr. 26). This discussion makes clear to this Court that the ALJ considered Plaintiff's limitations as to social functioning in determining Plaintiff's RFC.

**B.     VE's Testimony**

Plaintiff contends that in response to the ALJ's hypothetical questions, the VE stated a person with Plaintiff's limitations would not be able to do Plaintiff's past work but could do the jobs of Addresser (DOT number 209.587-010); Document Preparer (DOT number 249.587-018); and Waxer (DOT number 779.687-038). (Doc. No. 12 p. 5). Plaintiff contends the VE's testimony is inconsistent with DOT as the VE acknowledged that the DOT does not address sitting and/or standing, off-task time, and absences. Id. Plaintiff contends the ALJ accepted testimony that appears to conflict with the DOT and failed to obtain an explanation from the VE and as a result, the decision is not supported by substantial evidence. Id.

Upon review, this Court cannot re-weigh conflicting evidence or make credibility determinations. Hays, 907 F.2d at 1456. Instead, this Court will only consider whether "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" exists. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). At step five of the process, an ALJ must determine whether a claimant, despite his work-related limitations, can perform work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1566(e). In making her decision, an ALJ may rely on VE testimony. 20 C.F.R. § 404.1566(e); Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). If the VE provides evidence conflicting with the DOT, the ALJ must "obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *4; see also Pearson, 810 F.3d at 210. The context of the word "apparent" in SSR 00–4p refers to where the expert's testimony seems to,

but does not necessarily, conflict with the *Dictionary*. Pearson, 810 F.3d at 209. The Fourth Circuit has ruled that an ALJ's merely asking the VE if there is any conflict between the testimony and the DOT is insufficient. Id. A VE's testimony that apparently conflicts with the DOT can provide substantial evidence if the ALJ received an explanation from the VE explaining the conflict and determined both that the explanation was reasonable and that it provided a basis of relying on the VE's testimony rather than the DOT. Id.

In the present case, the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC to the VE, to which VE testified the jobs of Addresser, Waxer, and Document Preparer exist in sufficient numbers. (Tr. 34). The VE also testified the DOT does not address sitting and/or standing, being off task, and absences. (Tr. 66). The VE further explained that despite the lack of definition, she provided information "based on a reasonable degree of vocational certainty, based on her education and her vocational experience with employers, job search, job placement, and empirical data." Id. This Court has held that the VE's testifying in accordance with her professional experience is a sufficient explanation. Campusano v. Berryhill, No. 3:17-cv-499-MOC, 2018 WL 1566332, at *3 (W.D.N.C. Mar. 30, 2018). Therefore, the ALJ's finding was properly based on VE's testimony regarding Plaintiff's ability to perform the occupations the VE addressed. The Court now addresses the three jobs the VE identified with which Plaintiff takes issue.

**a.     Addresser**

Plaintiff contends the job of an Addresser does not exist in significant numbers in the national economy. (Doc. No. 12 pp. 7-8). However, even a relatively small number of jobs constitute substantial evidence to support a nondisability finding. Hicks v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by

the VE constitute an insignificant number). Here, the VE concluded that given Plaintiff's factors, approximately 70,000 Addresser jobs exist in the national economy. (Tr. 34). The DOT controls and the VE testified in accordance with the DOT. The ALJ properly relied on the VE's testimony.

**b.   Document Preparer**

Plaintiff contends that limiting Plaintiff to "routine, repetitive tasks that involve occasional decision making" (Tr. 22) conflicts with the "reasoning level 3" that the DOT identifies for the Document Preparer job. (Doc. No. 12 pp. 8-11). Plaintiff cites the Fourth Circuit's unpublished decision in Henderson v. Colvin, 643 F. App'x 273, 276–77 (4th Cir. Apr. 5, 2016), which does not suggest a different result. There, the court addressed a limitation to "one-to-two step tasks," which is different from the RFC limitation here, which is routine and repetitive tasks. Id. Plaintiff argues that a number of district courts in the Fourth Circuit have invoked Henderson and found an apparent conflict between a Reasoning Level 2 or 3 and RFC limitation to simple, routine, and repetitive tasks. Doc. No. 12 p. 10. This Court found in Clontz v. Astrue that jobs requiring reasoning level of 3 is consistent with DOT criteria and Plaintiff's RFC limitation to simple tasks. No. 2:12–CV–00013–FDW, 2013 WL 3899507, at *5 (W.D.N.C. 2013).

Plaintiff attempts to create a conflict by referencing the O*Net. The ALJ was not required to identify or discuss conflicts between O*Net and VE testimony. See SSR 00-4p, 2000 WL 1898704, at *2-3 (stating in making disability determinations, the DOT is the primary source, as well as its companion publication, the SCO). The Court has consistently rejected claimants' reliance on O*Net as the basis for a conflict between VE's testimony and the DOT. Bushaw v. Berryhill, No. 1:17-cv-00192-FDW, 2018 WL 1972711, at *5 (W.D.N.C. Apr. 26, 2018) (noting SSR 00-4p "contains no mention of O*Net" and joining "other district courts in rejecting Plaintiff's argument and request to impose an obligation on the ALJ unsupported by law.")

(collecting cases); Street v. Berryhill, No. 1:17-cv-00204-FDW, 2018 WL 1935866, at *7 (W.D.N.C. Apr. 24, 2018) ("[A]s previously discussed an ALJ is not required to resolve conflicts between the VE's testimony and publications other than the DOT. As such, the Court finds no apparent conflict."); Rinehart v. Berryhill, No. 3:17CV425-GCM, 2018 BL 142970, at *6 (W.D.N.C. Apr. 18, 2018) ("Agency regulations and rulings currently identify the DOT as a source of reliable job information for determining disability claims and as suitable for administrative notice. As such, the O*NET's characterization . . . is irrelevant." (citations omitted)); Reed v. Berryhill, No. 3:17-cv-574, 2018 BL 131625, at *4 (W.D.N.C. Apr. 12, 2018) ("[T]he DOT remains a source of reliable job information for determining disability claims and is suitable for administrative notice."); Campusano, 2018 WL 1566332, at *3 ("[W]hile plaintiff claims that O*Net replaced the DOT, that appears not to be completely accurate . . . ."); Fender v. Berryhill, No. 1:17-cv-00041-RJC, 2018 WL 1536485, at *4 (W.D.N.C. Mar. 29, 2018) ("The Court does not believe that the ALJ has an affirmative duty to seek out and resolve apparent conflicts between the VE's testimony and O*Net, especially when the VE did not rely on O*Net for their conclusions.") (citing Nguyen v. Colvin, No. SACV 13-01338-DFM, 2014 WL 2207058, at *3 (C.D. Cal. May 28, 2014)); Rozelle v. Berryhill, No. 3:17-cv-00127-RJC, 2018 WL 1187781, at *4 (W.D.N.C. Mar. 7, 2018) ("Plaintiff cites no authority to support the proposition that the ALJ must discuss apparent conflicts between the VE testimony and O*Net.") (collecting cases). Other courts have taken a similar stance with regard to the decision that the O*Net is not a substitute for the DOT. See Spurlock v. Berryhill, No. 1:17CV411, 2018 WL 791302, at *8 (M.D.N.C. Feb. 8, 2018) (memorandum opinion and recommendation) ("[E]ven if the VE's testimony was in conflict with 0*NET [sic], there is no requirement that the VE's testimony comply with that database." (quoting Malfer v. Colvin, Civ. No. 12-169J, 2013 WL 5375775, at *5 (W.D. Pa. Sept. 24, 2013));

11

see also <u>Ryan v. Astrue</u>, 650 F. Supp. 2d 207, 218 (N.D.N.Y. July 1, 2009) (holding the same); <u>Willis v. Astrue</u>, No. C08-1198-RSM, 2009 WL 1120027, at *3 (W.D. Wash. Apr. 24, 2009) ("Plaintiff fails to provide any support for a contention that the creation of the O-NET altered this requirement [reliance on the DOT]."). As the Court finds that there is no inconsistency to resolve, the ALJ made no error in this regard.

**c.     Waxer**

As stated above, the O*Net does not control DOT, making Plaintiff's arguments moot. In short, there was no conflict as to the Addresser, Document Preparer, and Waxer jobs and the ALJ appropriately relied on the VE's testimony regarding these jobs, which is in accordance with the DOT.

## IV.     CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 13) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: June 26, 2018

Frank D. Whitney
Chief United States District Judge